IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-2377-WJM-STV

E&I HOLDINGS, INC.,

    Plaintiff,

v.

CORAL SPRINGS EGGS AND I, LLC,
POMEGRANATE, INC.,
JUAN HERNANDEZ, and
RIHANEH ODDE-RIVERA,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

This is a franchisor/ franchisee dispute between Plaintiff E&I Holdings, Inc. ("Plaintiff") and Defendants Coral Springs Egg and I, LLC, Pomegranate, Inc., Juan Marin Hernandez, and Rihaneh Odde-Rivera (jointly, "Defendants"). In their Complaint (ECF No. 1) ("Complaint"), Plaintiffs seek injunctive relief and damages for trademark infringement, unfair competition, breach of contract, and breach of guarantees. Defendants filed Counterclaims (ECF No. 26) ("Counterclaims"), alleging breach of contract, fraud in the inducement, violations of Florida tort law, and violation of the Colorado Consumer Protection Act.

Now before the Court is Plaintiff's Motion to Dismiss Defendants' counterclaims. (ECF No. 33) ("Motion"). Defendants filed a Response Brief in Opposition to Plaintiff's Motion to Dismiss Counterclaims (ECF No. 34) ("Response") and Plaintiff filed a Reply

in Further Support of its Motion to Dismiss Defendants' Counterclaims (ECF No. 35) ("Reply").  For the reasons set forth below, Plaintiff's Motion is denied with respect to Defendants' breach of contract counterclaim and granted with respect to all of Defendants' other counterclaims.

## I.  BACKGROUND

The following facts are undisputed unless attributed to a party or otherwise noted.

Plaintiff is the franchisor of the Egg & I restaurants located throughout the United States.  (ECF No. 26 at 5, ¶ 12.)  On April 30, 2013, Plaintiff entered into a written franchise agreement with Defendant Pomegranate, Inc., guaranteed by Defendants Hernandez and Odde-Rivera.  (*Id.* at 8–9, ¶¶ 20, 22.)  On July 18, 2014 , Plaintiff entered into a written franchise agreement with Defendant Coral Springs Egg and I, LLC, guaranteed by Defendant Hernandez.  (*Id.*, ¶¶ 21, 22.)  These are separate franchise agreements involving different, but related, entities.  However, the terms, undertakings, and covenants set forth in the franchise agreements are identical.  (ECF No. 26 at 9, ¶ 23.)  The parties' briefs suggest that the franchise agreements give rise to identical claims, against all Defendants, and counterclaims.  Thus, the Court will refer to Defendants collectively and will proceed with its analysis as though there is only one franchise agreement at issue.

Defendants agreed to operate their franchised restaurants in accordance with the Franchise Agreement for the Franchise Agreement's full ten-year term.  (*Id.* at 9, ¶ 23.)  Defendants also agreed to pay Plaintiff a monthly royalty of four and a half

percent of each restaurant's gross sales, as well as an advertising contribution up to two percent of each restaurant's gross sales. (*Id.* at 9–10, ¶ 25.)  The Franchise Agreement expressly provides for termination in the event that the franchisee ceases to operate or otherwise abandons the franchised restaurant, or upon repeated noncompliance, especially if the franchisee defaults after having received one prior notice of default within a twelve month period.  (*Id.* at 10–11, ¶¶ 27–28.)

On May 18, 2017, Plaintiff sent notices of default to Defendants based on their failure to pay Plaintiff the contractually owed royalties and advertising fees.  (*Id*. at 14, ¶ 36.)  Defendants were asked to pay all amounts due within ten days of receipt and informed them that failure to cure within that period could result in termination.  *Id.*  By September 15, 2017, Plaintiff had terminated the Franchise Agreement.  (*Id*. at 14–15, ¶¶ 38, 40.)  But, Plaintiff says, Defendants continue to operate at least one restaurant as if still a franchisee good standing.  Plaintiff therefore brings this lawsuit.

Defendants assert that in early April 2013, Plaintiff, through its representatives, "upsold [Defendant Hernandez], using deceptive false sense of urgency sales tactics, falsely telling [Defendant Hernandez] that open territories were scarce and insisting that he buy a 12-store development agreement to develop and open Egg & I franchised restaurants." (*Id.* at 37, ¶ 5.)  Defendants allege that Plaintiff provided them "with a franchise disclosure document which severely understated and misrepresented the costs of operating and building out the franchised restaurants, and [Plaintiff] understated and misrepresented rent costs." (*Id.*)  Defendants claim that Plaintiff knew that the area being developed, Palm Beach County, "had very expensive rent, build out

3

and labor costs, which were higher than and not consistent with the unsubstantiated cost, rent and labor cost estimates represented by [Plaintiff]." (*Id.*)

Defendants further claim that Plaintiff "knew but failed to disclose the material fact that its internal policies and procedures would cause it to disapprove proposed restaurant and development sites with rent of $30 per square foot or more." (*Id.* at 37–38, ¶ 6.) Defendants allege that Plaintiff "knew but failed to disclose that, in light of that policy, it would be impossible for Defendants to meet the requirement of the Development Agreement to open 12 stores in only a few years in a very expensive area like Palm Beach County, Florida." (*Id.* at 38, ¶ 6.) According to Defendants, this "hidden policy forced Defendants to open their first store in the unsuitable Boynton Beach area, which is a sketchy and depressed low-rent, crime-ridden area without the proper demographics to support an upscale family brunch restaurant concept like Egg & I." (*Id.*)

Additionally, Defendants claim that when Plaintiff "was bought by and merged into competing breakfast chain First Watch in 2015, [Plaintiff] adopted a policy against opening new Egg & I restaurants, and informed Defendants that they would not approve any new Egg & I restaurants for at least a year due to the acquisition." (*Id*. at 39, ¶ 11.) Defendants claim that because First Watch has ten First Watch company stores in Palm Beach County, First Watch is "strongly opposed" to the eleven new competing Egg & I franchises that Defendants' development agreement requires. (*Id.*) Defendants also claim that "[a]s part of its plan to abandon and sabotage the Egg & I brand, restaurants, franchises and developers in light of the First Watch acquisition,

4

[Plaintiff] has intentionally watered down and undermined the quality of the Egg & I brand, menu, system and restaurants by stripping out, removing and changing many of the system's most profitable and most popular menu items." (*Id.* at 41, ¶ 18.)

Defendants raise five counterclaims. First, they claim that Plaintiff "materially breached the Development Agreement and the franchise agreements by terminating them without cause and/ or for false and pretextual reasons . . . and also by weakening, watering down and abandoning the Egg & I brand, menu, system, franchisees and developers." (*Id.* at 42, ¶ 23.) Second, Defendants claim that "[Plaintiff] committed fraud in the inducement against Defendants" by making "false, unsubstantiated, unrealistic and overstated profit and earnings claims orally and through the marketing decks which grossly overstated the profits and [return on investment] actually experienced." (*Id*. at 46, ¶ 35, *Id.* at 44, ¶ 28.) Third, Defendants argue that "[Plaintiff's] misconduct violated the Florida Franchise Act, FSA Section 817.416, by intentionally misrepresenting the prospects and chances for success of the Defendants' franchises, misrepresenting and failing to disclose the total required franchise investment, and misrepresenting and failing to disclose efforts to establish more franchises than Palm Beach County is likely to sustain or support." (*Id.* at 49, ¶ 51.) Fourth, Defendants allege that this "misconduct constituted unconscionable, unfair and deceptive trade practices in violation of the Florida Unfair and Deceptive trade practices Act. (*Id.* at 53, ¶ 68.) Fifth, and finally, Defendants claim they are entitled to recover $20 million in treble damages and their reasonable attorneys' fees pursuant to the Colorado Consumer Protection Act, because Plaintiff's "misrepresentations and failures to disclose were intentional and [Plaintiff] committed them intentionally and in bad faith as

5

part [of] its effort to injure, cheat and defraud the Defendants and devalue their restaurants." (*Id.* at 57, ¶ 86.)

Plaintiff moves to dismiss all counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 33.)

## II. LEGAL STANDARD

In reviewing a Motion to Dismiss under Rule 12(b)(6) the Court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007). Thus the Court "must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("*Twombly*")).

"[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570). This means that "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief. 'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly,* 550 U.S. at 545 & 556). Plaintiff "does not need detailed factual allegations" but must plead more than merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of

6

action." *Id.*

### III.  ANALYSIS

The Court will consider Plaintiff's Motion with respect to each counterclaim in turn.

### A.  Defendants' Breach of Contract Counterclaim

Defendants claim that Plaintiff "materially breached the Development Agreement and the franchise agreements by terminating them without cause and/or for false and pretextual reasons such as favoring and protecting the First Watch company stores, brand and system, and also by weakening, watering down and abandoning the Egg & I brand, menu, system, franchisees and developers." (ECF No. 26 at 42, ¶ 23.) Defendants elaborate that Plaintiff "materially breached and violated the implied covenant of good faith and fair dealing in the Development Agreement and franchise agreements by intentionally removing the most popular and profitable menu items to weaken Egg & I as a competitor to First Watch" and by "refusing to approve new sites and restaurants for secret, undisclosed, arbitrary and pretextual reasons." (*Id.* at 42–43, ¶ 23.)

Plaintiff challenges Defendants' counterclaim for breach of contract on the grounds that Defendants do not "identify any contractual language that supports their claim." (ECF No. 33 at 7.) Plaintiff claims that it properly terminated the agreement after Pomegranate failed to open its third restaurant in accordance with the development schedule even after being afforded notice and an opportunity to cure. (*Id.*) Plaintiff also explains that the express terms of the termination notices contained

7

in the franchise agreements provide for termination in the event of Defendants' noncompliance or abandonment of the franchised restaurant. (*Id.*)

In their Response, Defendants offer two main rationales for denying Plaintiff's Motion with respect to Defendants' breach of contract counterclaim. First, they argue that the agreements were modified by Plaintiff, either orally or by Plaintiff's conduct. (ECF No. 34 at 2, 3.) Namely, Defendants claim that Plaintiff "modified and waived the Development Agreement's store-opening requirements by affirmatively obstructing Defendants' ability to open any new restaurants." (*Id*. at 2.) Defendants also argue that Plaintiff modified the payment schedule and waived the prompt payment requirements by conduct permitting Defendants to pay quarterly for year. (*Id.*) Thus, Defendants argue that Plaintiff could not terminate the franchise agreements for late payments when Plaintiff had modified the payment terms to permit quarterly payments. (*Id.* at 3.)

Second, Defendants argue that Plaintiff breached the implied covenant of good faith and fair dealing, first by "forc[ing] Defendants into an unsuitable location by imposing its secret and undisclosed rent cap requirement" and second by "watering down and cheapening the menus and food offerings of Egg & I to make it less competitive with First Watch stores." (*Id.*) While the agreements gave Plaintiff the right to implement such modifications, Defendants argue that "[a]ny right to modify system specifications and standards clearly does not include the right to intentionally sabotage the Egg & I franchises to favor a competing chain that had recently acquired the franchisor." (*Id*.)

In their Reply, Plaintiff argues that the agreements were not modified either orally

8

or by its conduct. (ECF No. 35 at 8.)

In the Court's reading of the parties' briefs, Defendants' counterclaim for breach of contract is based entirely on the implied covenant of good faith and fair dealing. (ECF No. 26 at 42, ¶¶ 22–24.) Plaintiff failed to consider this argument in both its Motion and Reply briefs. Rather, Plaintiff's briefs focused on whether there was a wrongful termination based on the express terms in the contract. Because Plaintiff's Motion fails to address the express basis of Defendants' counterclaim, Plaintiff's Motion to Dismiss is denied with respect to Defendant's counterclaim for breach of contract.

**B.     Defendants' Fraud in the Inducement Counterclaim**

Defendants claim that Plaintiff committed fraud in the inducement by "severely understat[ing] and misrepresent[ing] the costs of operating, renting and building out the franchised restaurants" and by making "false, unsubstantiated, unrealistic and overstated profit and earning claims orally." (ECF No. 26 at 44, ¶¶ 27–28.) Moreover, according to Defendants, Plaintiff "knew but failed to disclose the material fact that its internal policies and procedures would cause it to disapprove proposed restaurant and development sites with rent of $25 [*sic*] per square foot or more."[1] (*Id*. at 44, ¶ 29.)

Plaintiff moves to dismiss this claim on two bases. First, Plaintiff argues that Defendants' fraud claim fails because it fails to meet Rule 9(b)'s heightened pleading requirements. (ECF No. 33 at 10.) And second, Plaintiff argues that "[D]efendants' fraud counterclaim is futile [because] Defendants expressly and contemporaneously acknowledged in writing that they were not relying on any alleged misrepresentations in

---

[1] Defendants initially allege that the internal policy was for a $30 per square foot limitation. (ECF No. 26 at 42.)

9

entering into their development and franchise agreements." (*Id.* at 11.)

As an initial matter, the Court is not persuaded by Plaintiff's Rule 9(b) argument. Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Pleading with particularity requires the plaintiff to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted). While Rule 9(b) requires a plaintiff to identify the circumstances constituting fraud, it does not require pleading "intent, knowledge or condition of the mind" with particularity. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).

Moreover, the Rule 9(b) standard is modified for pleading a fraudulent omission claim. To allege a fraud claim premised on an omission, a plaintiff must identify "the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed." *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012) (citation omitted).

In their Counterclaim, Defendants specifically identified that "[i]n early April 2013, shortly before Defendants' 12-store, 7-year 2013 development argument was signed, [Plaintiff] through Tom Petska and Bill Baumhauer, upsold Defendants." (ECF No. 26 at 43.) Defendants also claim that as a result of these misrepresentations, they signed the development agreements and the franchise agreements at a cost of over $750,000,

10

including over $230,000 in development fees paid directly to Plaintiff under the development agreement. *Id.* at 44, ¶ 31.) With regards to the non-disclosed policy restricting approval of proposed restaurant locations, Defendants clearly identify the policy that should have been disclosed, the reason it should have been disclosed (*i.e.*, the policy made it "impossible for Defendants to meet the requirement of the Development Agreement to open 12 store in 7 years in a very expensive area like Palm Beach County, Florida" (*id.* at 44, ¶ 29)), and the circumstances in which the information should have been disclosed (*i.e.*, before Defendants relied on it). Thus, the Court finds that Defendants have satisfied Rule 9(b)'s heightened pleading requirements.

Defendants fail, however, to respond to Plaintiff's other argument regarding the provision in the contract in which Defendants acknowledged that Plaintiff "shall not be liable or obligated for . . . claims of negligent or fraudulent misrepresentation based on any . . . oral representations or commitments." (ECF No. 35 at 2 (quoting Franchise Agreements § 24.14 (ECF Nos. 33-3, 33-4)).) The Court takes no position on the merits of Plaintiff's argument, or on the legal viability or enforceability of this provision. Given Defendants' failure to respond to the argument altogether, however, the Court deems that portion of the motion confessed. Accordingly, the Court grants Plaintiff's Motion to Dismiss with respect to Defendants' fraud in the inducement counterclaim.

Additionally, Plaintiff claims that Defendants have explicitly waived their right to an award of punitive damages in the franchise agreements they signed. (ECF No. 33 at 13 fn. 7.) Defendants argue that punitive damages waivers in franchise agreements are invalid if the agreement is induced by fraud. (ECF No. 34 at 13.) Although the

Court is dismissing the fraud claim, it need not address whether punitive damages could never be available because, as Plaintiff accurately notes, it is clear that Colo. Rev. Stat. § 13-21-102(1.5)(a) prohibits a request for punitive damages at this early stage of the case. Accordingly the Court grants Plaintiff's Motion with respect to Defendants' request for punitive damages.

**C.     Defendants' Florida State Law Counterclaims**

Defendants argue that Plaintiff's alleged misrepresentations violated the Florida Franchise Act and the Florida Unfair and Deceptive Trade Practices Act. (ECF No. 26 at 46, 50.)

In their Motion, Plaintiff contends that these claims are barred because the parties' agreement contains a choice of law provision, in which the parties expressly agreed that all disputes between the parties would be governed by Colorado law. (ECF No. 33 at 14.)

In their Response, Defendants concede that

> Colorado has adopted the Restatement (Second) of Conflicts of Law's approach to multi-state claims sounding in tort. "We announce that Colorado will adopt the general rule of applying the law of the state with the most 'significant relationship' with the occurrence and the parties, as presented and defined in the Restatement, (Second) Conflict of Laws, Vol. 1, Sec. 145 (1969)." *First Nat'l Bank v. Rostek*, 182 Colo. 437, 448, 514 P.2d 314, 320 (1973). *See also Ranger v. Fortune Ins. Co.*, 881 P.2d 394, 395 (Colo. Ct. App. 1994). Further, the Colorado Supreme Court has followed the Supreme Court's holding in *Bremen*, that forum selection clauses are "presumptively valid unless it is unreasonable, fraudulently induced, or against public policy." *Cagle v. Mathers Family Tr.*, 2013 CO 7, ¶ 18, 295 P.3d 460, 465.

(ECF No. 34 at 11.)

However, instead of applying the "significant relationship" test, Defendants cite Tenth Circuit case law arguing that fraud in the inducement claims are subject to the underlying agreements' choice of law clause. (*Id.* at 11–12.)

According to the Restatement (Second) of Conflict of Laws § 145(1)–(2), the Court must apply the law of the state with the "most significant relationship to the occurrence and the parties," taking into account

>  (a) the place where the injury occurred,
>
>  (b) the place where the conduct causing the injury occurred
>
>  (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
>  (d) the place where the relationship, if any, between the parties is centered.

Defendants do state that "the bulk of the misrepresentations and fraudulent inducement occurred in Florida. The damages occurred in Florida." (ECF No. 34 at 12.) However, this brief statement does not engage with the necessary inquiry. Accordingly, Defendants' argument fails because they did not apply the appropriate standard. *See Meyer v. Bd. of County Comm'rs*, 482 F.3d 1232,1242 (10th Cir. 2007), ("[the court is] not charged with making the parties' arguments for them"); *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (*quoting Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990))). Therefore, Plaintiff's

Motion to Dismiss is granted with respect to Defendants' Florida state law counterclaims.

**D.     Defendants' Colorado Consumer Protection Act Claim**

Defendants allege that Plaintiff's misconduct constituted unconscionable, unfair, and deceptive trade practices [violated] the Colorado Consumer Protection Act ("CCPA").

Plaintiff moves to dismiss this case on the basis that "Defendants also do not sufficiently allege that [Plaintiff] engaged in any deceptive trade practice or that [Plaintiff's] alleged conduct significantly impacted the public as actual or potential consumers of [Plaintiff's] goods or services–necessary elements of the claim." (ECF No. 33 at 13.)

The CCPA was enacted to regulate commercial activities and practices, and works "to deter and punish businesses for consumer fraud." *HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011). A private cause of action under the CCPA requires:

> (1) that the defendant engaged in an unfair or deceptive trade practice;
>
> (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
>
> (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
>
> (4) that the plaintiff suffered injury in fact to a legally protected interest; and
>
> (5) that the challenged practice caused the plaintiff's injury.

14

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003). "All elements of a CCPA claim must be met; otherwise, the claim fails as a matter of law." *HealthONE*, 805 F. Supp. 2d at 1120.

The Colorado Supreme Court has held that the CCPA "cannot be used to remedy a purely private wrong." *Crowe v. Tulle*, 126 P.3d 196, 208 (Colo. 2006). The relevant considerations courts should rely on to determine whether a challenged practice significantly impacts the public within the context of a CCPA claim are: (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings*, 62 P.3d at 149.

In their Response, Defendants attempt to argue that "the weakening and diminished quality of food and beverage offerings sold to the public significantly impact the public as actual or potential consumers of the Egg & I franchises, food, goods, and services." (ECF No. 34 at 8.) Defendants do not, however, apply the considerations specified by the Colorado Supreme Court.

The Court is not persuaded by Defendants' argument. The Colorado Supreme Court has specifically stated that, "[u]nder the CCPA, it is not enough that the defendant's industry affects the public interest. Adopting an interpretation that the public impact element of the CCPA could be satisfied simply if the defendant's industry 'affects the public interest' would render this requirement and our discussion of the

public interest considerations in *Rhino Linings* meaningless." *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 155 (Colo. 2007). The Court finds that Defendants have not satisfied the CCPA's public impact requirement and thus grants Plaintiff's Motion to Dismiss with respect to this counterclaim.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Dismiss Defendants' Counterclaims (ECF No. 33) is GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff's Motion is DENIED with respect to Defendants' breach of contract counterclaim;

2. Plaintiff's Motion is GRANTED WITHOUT PREJUDICE with respect to Defendants' fraud in the inducement counterclaim;

3. Plaintiff's Motion is GRANTED WITH PREJUDICE with respect to Defendants' counterclaims arising under Florida state law; and

4. Plaintiff's Motion is GRANTED WITH PREJUDICE with respect to Defendants' counterclaims arising under the Colorado Consumer Protection Act.

Dated this 28th day of September, 2018.

BY THE COURT:

_____
William J. Martínez
United States District Judge